**EXHIBIT  1**

Fulton County Superior Court
***EFILED***BR
Date: 8/25/2017 4:52:11 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CHITTRANJAN "CHUCK" THAKKAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| BAY POINT CAPITAL PARTNERS, LP, | ) | 2017CV294607 |
| BAY POINT ADVISORS, LLC, | ) | |
| CHARLES ANDROS, JOHN DOE 1, and | ) | |
| JOHN DOE 2, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SUMMONS

**TO THE ABOVE-NAMED DEFENDANTS:**

You are hereby summoned and required to file with the Clerk of said court and serve upon Plaintiff's attorney, whose name, address, and phone number are:

Eric J. Nathan, Esq.
WEENER & NATHAN, LLP
5887 Glenridge Drive, NE
Suite 275
Atlanta, Georgia 30328
Tel:    770.392.9004
Fax:    770.522.9004
Email: nathan@wnllp.com

an answer to the complaint, which is herewith served upon you, within 30 days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of ___8/25/2017_____, 2017.

Clerk of Superior Court of Fulton County

By: _Brenda Ray_____
Deputy Clerk

Fulton County Superior Court
***EFILED***BR
Date: 8/25/2017 4:52:11 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CHITTRANJAN "CHUCK" THAKKAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE NO.:** |
| | ) | |
| BAY POINT CAPITAL PARTNERS, LP, | ) | 2017CV294607 |
| BAY POINT ADVISORS, LLC, | ) | |
| CHARLES ANDROS, JOHN DOE 1, and | ) | |
| JOHN DOE 2, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

COMES NOW Chittranjan "Chuck" Thakkar ("Mr. Thakkar" or "Plaintiff"), through his undersigned counsel, and states this Complaint against Bay Point Capital Partners, LP ("Bay Point Capital"), Bay Point Advisors, LP ("Bay Point Advisors"), Charles Andros ("Mr. Andros"), and business partners of Mr. Andros to be identified through discovery in this action and presently designated as John Doe 1 and John Doe 2 (with Bay Point Capital, Bay Point Advisors, Mr. Andros, John Doe 1 and John Doe 2 being collectively referred to as "Defendants"), respectfully showing the Court:

### PARTIES, JURISDICTION, & VENUE

1. Plaintiff is a resident of the State of Florida.

2. Bay Point Capital is a Delaware limited partnership, registered with the Georgia Secretary of State to do business in the State of Georgia. Bay Point's registered agent is MendenFreiman RA Services, Inc., located at 5565 Glenridge Connector NE, Suite 850, Fulton County, Atlanta, Georgia, 30342. Bay Point Capital maintains an office at 3050 Peachtree Rd, Suite 2, Atlanta, GA 30305.

−1−

3. The general partner of Bay Point is Bay Point Advisors, LLC ("Bay Point Advisors"). Bay Point Advisors is a Florida limited liability company, registered to do business in the State of Georgia. The registered agent for Bay Point Advisors is Greg Jacobs, located at 3050 Peachtree Road, NW, Suite 2, Fulton County, Atlanta, Georgia 30305, who may be served with process.

4. Mr. Andros is, on information and belief, the controlling individual for Defendants Bay Point Capital and Bay Point Advisors. Mr. Andros may be served at the offices of Bay Point Capital, located at 3050 Peachtree Rd, Suite 2, Atlanta, GA 30305, or at his residence, or wherever else he may be located in person.

5. John Doe 1 is a business partner of Mr. Andros. The residence of John Doe 1 is presently unknown, but will be ascertained through discovery in this action.

6. John Doe 2 is a business partner of Mr. Andros. The residence of John Doe 2 is presently unknown, but will be ascertained through discovery in this action. All of the Defendants are subject to jurisdiction in this Court and venue is proper in this Court because the contract upon which this litigation is based, in material part, was to be performed in Fulton County, Georgia, was executed in material part in Fulton County, Georgia, and has been performed in material part in Fulton County, Georgia.

7. Furthermore, Mr. Andros is subject to jurisdiction in this Court and venue is proper in this Court because the negligent representations made by Mr. Andros, as described more fully herein, occurred in material part in Fulton County, Georgia.

8. Furthermore, Mr. Andros is subject to jurisdiction in this Court and venue is proper in this Court because Mr. Andros is a resident of Fulton County, Georgia.

9. Furthermore, John Doe 1 and John Doe 2 are subject to the jurisdiction in this Court based on

Georgia's Long Arm Statute, O.C.G.A. § 9-10-91(1), because John Doe 1 and John Doe 2 have, on information and belief, engaged in numerous communications with the remaining Defendants for the purposes of conducting business deals in the State of Georgia, to be further discovered during this action.

### BACKGROUND FACTS

### PLAINTIFF'S LOAN WITH WELLS FARGO

10. Mr. Thakkar obtained a loan from Wells Fargo, National Association ("Wells Fargo"), which was evidenced by a certain Amended, Restated and Consolidated Promissory Note, dated April 30, 2013, in the original principal amount of $12,910,000.00 (the "Individual Promissory Note").

11. As of August 31, 2015, Mr. Thakkar owed Wells Fargo $8,896,250.05 in principal on the Individual Promissory Note.

12. Certain companies affiliated with Mr. Thakkar and his family also were obligated to Wells Fargo on certain loans (the "Thakkar Company Loans"), as evidenced by a certain Amended, Restated Promissory Note, dated April 30, 2013, in the original principal amount of $19,750,000.00 (the "Thakkar Companies Promissory Note").

13. Companies in which Mr. Thakkar has a beneficial interest pledged their interests in real property as collateral to secure payment of the Individual Promissory Note and Company Promissory Note.  That collateral included real property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. to secure payment of the Promissory Note.

14. On May 4, 2015, five companies affiliated with Mr. Thakkar and his family filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court").  Those companies are

Bay Circle Properties, LLC, DCT Systems Group, LLC, Sugarloaf Centre, LLC, Nilhan

Developers, LLC, and NRCT, LLC (the "Thakkar Borrower Entities").

15. As of August 31, 2015, the Thakkar Borrower Entities owed Wells Fargo $11,405,801.13 in

principal on the Thakkar Companies Promissory Note.

16. As of August 31, 2015, Mr. Thakkar and/or the Thakkar Borrower Entities had not made

certain payments on the Individual Promissory Note and/or Thakkar Companies Promissory

Note.

17. Mr. Thakkar and Wells Fargo negotiated a settlement regarding the unpaid loans, and entered

into a written Settlement Agreement dated November 18, 2015 (the "Settlement Agreement").

18. Under the terms of the Settlement Agreement, Mr. Thakkar and Thakkar Borrower Entities

were required to make certain settlement payments by certain dates.

### DEFENDANTS' REPRESENTATIONS TO PLAINTIFF REGARDING ACQUIRING

### PLAINTIFF'S LOAN WITH WELLS FARGO

19. Mr. Thakkar was introduced to Mr. Andros with the understanding that Mr. Andros, through

Bay Point Capital and Bay Point Advisors, might have an interest in providing funding to

replace the loan that Mr. Thakkar had with Wells Fargo.

20. Mr. Thakkar met with Mr. Andros and explained to Mr. Andros that Mr. Thakkar and the

Thakkar Borrower Entities had a loan which had been in default with Wells Fargo for which

Mr. Thakkar and the Wells Fargo had executed the Settlement Agreement.

21. Mr. Thakkar further explained to Mr. Andros that the collateral for the loan was worth much

more than the amount owing to Wells Fargo.

22. Mr. Andros discussed with Mr. Thakkar that Mr. Andros and his companies would want an

annualized effective return of fifteen percent (15%) on the amount that they would pay Wells

–4–

Fargo to purchase the loan.    Mr. Thakkar offered to pay up to an annualized effective eighteen percent (18%) return on the amount that Mr. Andros would pay Wells Fargo to purchase the loan, and Mr. Andros and Mr. Thakkar ultimately negotiated an annualized effective seventeen and one-half percent (17.5%) return on the amounts that Mr. Andros would pay Wells Fargo to acquire the loans from Wells Fargo.

23. During the negotiations between Mr. Andros and Mr. Thakkar, Mr. Andros repeatedly promised to Mr. Thakkar that Mr. Andros' companies did not want the collateral securing the loans with Wells Fargo, but instead wanted the negotiated monetary return on their purchase price to acquire the Wells Fargo loans.

24. Mr. Andros represented to Mr. Thakkar that Bay Point Capital "was not the kind of company" that would take real property worth much more than the loan.

25. Based on the representations and promises made by Mr. Andros, Mr. Thakkar introduced Mr. Andros to the appropriate individual at Wells Fargo to acquire the loans.

### PLAINTIFF'S PAYMENTS TO DEFENDANTS ON THE ACQUIRED LOAN AND DEFENDANTS TAKING OF COLLATERAL GROSSLY IN EXCESS OF THE LOAN BALANCE

26. After making the representations to Plaintiff referenced above, Bay Point Capital then acquired the loans from Wells Fargo.

27. Bay Point Capital paid Wells Fargo less than the balance owing by Mr. Thakkar and the Thakkar Borrower Entities when Bay Point Capital acquired those loans, on information and belief.

28. After Bay Point Capital acquired the loans from Wells Fargo, Mr. Thakkar paid Bay Point Capital all but approximately $2,700,000.00 of the amount owing by arranging for certain sales of real property and loans from other entities to pay to Bay Point Capital.

29. As a result of the payments to Bay Point Capital, only $2,700,000.00 remained owing to Bay
Point Capital on May 9, 2017 when the final payment due under the Settlement Agreement
matured.  The maturity date stated in the Settlement Agreement was May 1, 2017, and the
Bankruptcy Court applied a five (5) business day cure period, which brought the payment due
date of May 9, 2017.

30. Mr. Thakkar worked diligently to obtain the final payment for Bay Point Capital prior to or by
May 9, 2017, but due to a number of events and circumstances not totally in his control was
unable to make the final payment by that date.

31. Since May 9, 2017, Mr. Thakkar has offered to pay the full payoff amount of approximately
$2,700,000 to Bay Point Capital, and Bay Point Capital has refused that offer of payment.

32. Instead of accepting payment, Bay Point Capital has recorded certain Deeds in Lieu of
foreclosure to the real property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree
Industrial Blvd., by which Bay Point Capital claims that it has acquired ownership to those two
properties.

33. The properties located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd.
are worth not less than $8,000,000.00.

34. By way of example of the value of those real properties, shortly before Bay Point Capital took
the property located at 5100 Peach Tree Industrial Boulevard, an offer of $4,600,000.00 had
been made for that real property.

35. Shortly before Bay Point Capital took the property located at 5150 Peach Tree Industrial
Boulevard, an offer of $2,400,000.00 had been made for that real property.

36. By recording Deeds in Lieu at to the real property located at 5100 Peachtree Industrial Blvd.
and 5150 Peachtree Industrial Blvd., subject to security deeds naming Bay Point Capital as

–6–

grantee, Bay Point Capital took properties worth not less than $8,000,000.00, despite being owed only approximately $2,700,000.00.

37. Bay Point Capital subsequently foreclosed on the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd.

38. Bay Point Capital ran a foreclosure advertisement prior to foreclosing on the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd.

39. In its foreclosure advertisement, Bay Point Capital incorrectly stated that the foreclosure sale of the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. would be conducted on July **6**, 2017.

40. In fact, Bay Point Capital conducted the foreclosure sale of the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. on July **5**, 2017.

### COUNT ONE – BREACH OF DUTY OF GOOD FAITH

41. Plaintiff incorporates the foregoing averments in this Count of its Complaint as if set out in full herein.

42. Under the Settlement Agreement and state law, Bay Point Capital had the option to record a Deed in Lieu either subject to its liens, or not subject to its liens, or to foreclose on collateral. Settlement Agreement, p. 23, ¶ 13.A.

43. Bay Point Capital had discretion under the Settlement Agreement to choose from the foregoing possible remedies after an event of default, with the Settlement Agreement stating: "Upon or after the occurrence of an Event of Default, Lender may at any time *and in its discretion*, without further notice to any Obligor or any other Person, record one or more of the Deeds in Lieu to effectuate a transfer of title to one or more Parcels of the Encumbered Property to Lender or its designated affiliate." Settlement Agreement, p. 23, ¶ 13.A (emphasis supplied).

44. The Settlement Agreement provides that "the internal laws of the State of Georgia" will be
    applied to determine the parties' rights and obligations to one another. Settlement Agreement,
    p. 28, ¶ 29.

45. Under Georgia law, every contract carries with it an implied duty to act in "good faith" in
    performing the terms of the contract.

46. The duty of good faith implied in all contracts applies to the election of remedies available
    under the contract. *See, e.g., In re Royal*, 75 B.R. 50, 53 (Bankr. S.D. Ga. 1987) ("I further
    conclude that First Bulloch is bound by the obligation of good faith which is implied in every
    contract in Georgia to apply the proceeds in the manner proposed by Mrs. Royal. O.C.G.A.
    13–4–20. *In Kleiner v. First National Bank*, 581 F.Supp. 955 (N.D.Ga., 1984) the court
    collected authorities which stand generally for the proposition that when one party has the
    power to unilaterally set terms in a contract, the discretion to do so is limited by a requirement
    that the creditor's action uphold both the spirit as well as the letter of the agreement. *Id.* at 960
    n. 5. As applied to the facts in this case, I adopt such a rule and hold that a lender must apply
    proceeds of collateral first to the primary obligations secured by that collateral. This upholds
    not only the Debtor's expectations as testified to in this case but also the reasonable
    expectations of any borrower who pledges collateral to secure his or her direct obligations as
    well as to secure the obligations of other parties.").[1]

---

1 *See also* Theresa Kilgore Porter, 23 Causes of Action 521, *Cause of Action for Breach of
Contract Arising from Bank's Failure to Act in Good Faith*, Causes of Action First Series
(Originally published in 1990; July 2016 Update) ("Where a contract confers on the defendant a
discretionary power affecting the fights of the plaintiff, the plaintiff may establish a breach of the
defendant's obligation to act in good faith through evidence that the defendant failed to exercise
that discretionary power in good faith. See, e.g., In re Kham & Nate's Shoes, No 2 Inc, 97 Bankr
Rep 420 (Bankr Ct ND Ill 1989) later proceeding First Bank of Whiting v Kham & Nate's Shoes,
No 2 Inc, 104 Bankr Rep 909 (ND Ill 1989) [Illinois law; bank is required to exercise right to
terminate agreement in good faith and in accordance with reasonable expectations of parties];

47. When a contract governing the rights of a lender and borrower contains discretionary provisions, the lender has a duty of good faith, as implied in all contracts, to elect the remedy that harms the borrower the least so long as the lender can be made whole by that remedy.  In the case at hand, the remedy that would make the lender whole, and harm the borrower the least, was foreclosure of one piece of collateral rather than recording Deeds in Lieu to both pieces of collateral, and then foreclosing that same collateral, which was worth vastly more than the loan balance.

48. As a result of Bay Point Capital's actions, Mr. Thakkar has been damaged in the amount of the value of the collateral exceeding the debt balance.

49. In determining the appropriate interpretation and application of the Settlement Agreement, the Court should apply the meaning conveyed by Mr. Andros to Mr. Thakkar that the collateral would not be taken to satisfy the loan unless necessary, for which reason Bay Point Capital's recording of deeds to real property worth multiples of the loan balance was an improper interpretation of the discretionary provisions under which Bay Point Capital could record Deeds or foreclose and look to various parcels of real property. *See* O.C.G.A. § 13-2-4 ("The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be

---

Perdue v Crocker National Bank, 38 Cal3d 913, 216 Cal Rptr 345, 702 P2d 503 (1985) app dism 475 US 1001 (1986) [bank is required to exercise right to establish insufficient fund charges in good faith and in accordance with reasonable commercial standards]; Ginn v Citizens & Southern National Bank, 145 Ga App 175, 243 SE2d 528 (1978) [creditor must exercise right to accelerate payment in good faith]; Carrico v Delp, 141 Ill App3d 684, 95 Ill Dec 880, 490 NE2d 972 (1986) [power to terminate credit agreement must be exercised in good faith]; Burkhardt v City National Bank, 57 Mich App 649, 226 NW2d 678 (1975) [mortgagee is required to exercise power to estimate amount needed in escrow to pay for taxes and insurance honestly and in good faith]; Best v United States National Bank, 303 Or 557, 739 P2d 554 (1987) [power to set fees for processing of checks dishonored for insufficient funds must be exercised in good faith].").

held as the true meaning.").

50. Defendants, including Mr. Andros, John Doe 1, and John Doe 2 are jointly liable for the damages caused to Plaintiff by virtue of their breach of the duty of good faith implied by law in the Settlement Agreement, in an amount to be proven at trial, but of not less than Five Million Dollars ($5,000,000.00), representing the difference in value of the real properties located at 5100 Peachtree Industrial Boulevard and 5150 Peach Tree Industrial Boulevard compared to the loan balance still owing to Bay Point Capital.

## COUNT TWO – CIVIL CONSPIRACY

51. Plaintiff incorporates the foregoing averments in this Count of its Complaint as if set out in full herein.

52. Plaintiff is entitled "[t]To recover damages based on a civil conspiracy,…[if he] show[s] that two or more persons combined 'either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort…. [T]he conspiracy of itself furnishes no cause of action. The gist of the action … is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.'  The essential element of the alleged conspiracy is proof of a common design establishing 'that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.' After the conspiracy is formed, members of the conspiracy are jointly and severally liable for acts of co-conspirators done in furtherance of the conspiracy."  *McIntee v. Deramus*, 313 Ga. App. 653, 656, 722 S.E.2d 377, 379–80 (2012).

53. "The existence of a conspiracy may 'be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.' (Citation and punctuation omitted.) *Nottingham v. Wrigley*, 221 Ga. 386, 388, 144 S.E.2d 749 (1965).   It is

–10–

usually within the province of the jury to draw such inferences; and so cases involving an alleged civil conspiracy are typically not resolved on summary judgment. *Outside Carpets, Inc. v. Industrial Rug Co.,* supra, 228 Ga. at 269, 185 S.E.2d 65 (the resolution of a conspiracy claim was not appropriate for summary judgment); *Tyler v. Thompson,* 308 Ga.App. 221(3), 707 S.E.2d 137 (2011) (trial court erred in granting summary judgment on civil conspiracy issue)." *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Trust,* 298 Ga. 221, 225–26, 780 S.E.2d 311, 318 (2015).

54. Mr. Andros combined with John Doe 1 and John Doe 2, on information and belief, to take property from Plaintiff, or companies affiliated with Plaintiff in which Plaintiff had a beneficial interest, by promising Plaintiff that Defendants did not want the property and would not take the property, then by obtaining the property by utilizing the remedy most damaging to Plaintiff, despite the availability of a less damaging remedy, by recording Deeds in Lieu to both 5100 Peachtree Industrial Boulevard and 5150 Peach Tree Industrial Boulevard and then foreclosing on both properties, when Defendants could have taken only one property and received sufficient value to satisfy the remaining balance owing on the loans.

55. Mr. Andros, John Doe 1, and John Doe 2 are jointly liable for the damages caused to Plaintiff by virtue of their civil conspiracy in an amount to be proven at trial, but of not less than Five Million Dollars ($5,000,000.00), representing the difference in value of the real properties located at 5100 Peachtree Industrial Boulevard and 5150 Peach Tree Industrial Boulevard compared to the loan balance still owing to Bay Point Capital.

## COUNT THREE – PROMISSORY ESTOPPEL

56. Plaintiff incorporates the foregoing averments in this Count of its Complaint as if set out in full herein.

–11–

57. Mr. Andros represented to Mr. Thakkar that Mr. Andros did not want and would not seek to take the real properties that Defendant Bay Point Capital subsequently took.

58. Mr. Andros represented to Mr. Thakkar that Mr. Andros wanted an annualized effective return of seventeen and one-half percent (17.5%) on the amount paid to Wells Fargo.

59. Mr. Thakkar reasonably relied on Mr. Andros' promises, as summarized herein, and in reliance on those promises executed the Settlement Agreement.

60. Injustice can only be avoided by enforcing Mr. Andros' promises.

61. To enforce Mr. Andros' promises, the Court should void the Deeds in Lieu recorded by Bay Point Capital and set aside the foreclosure by Bay Point Capital.

### COUNT FOUR – FRAUDULENT OR NEGLIGENT REPRESENTATIONS

62. Plaintiff incorporates the foregoing averments in this Count of its Complaint as if set out in full herein.

63. Mr. Andros represented to Mr. Thakkar that Mr. Andros did not want and would not seek to take the real properties that Defendant Bay Point Capital subsequently took.

64. Mr. Andros represented to Mr. Thakkar that Mr. Andros wanted a return of seventeen and one-half percent (17.5%) on the amount paid to Wells Fargo.

65. If the foregoing representations were made *with* intent to mislead Mr. Thakkar, then the representations were *fraudulent*, and have caused Mr. Thakkar damage for which he is entitled to be compensated in an amount to be determined at trial.

66. If the foregoing representations were made *without* an intent to mislead Mr. Thakkar, then the representations were *negligent*, and have caused Mr. Thakkar damage for which he is entitled to be compensated in an amount to be determined at trial.

67. Mr. Andros' representations to Mr. Thakkar, as summarized herein, were essential and material

–12–

inducements that led Mr. Thakkar to execute the Settlement Agreement, which has now proved
to be to his detriment.

68. Mr. Thakkar reasonably relied upon Mr. Andros' negligent representations to his detriment.

69. Defendants are jointly liable to Plaintiff by virtue of their untrue representations to Mr. Thakkar
for the damages caused to Mr. Thakkar in an amount to be proven at trial, but of not less than
Five Million Dollars ($5,000,000.00), representing the difference in value of the real properties
located at 5100 Peachtree Industrial Boulevard and 5150 Peach Tree Industrial Boulevard
compared to the loan balance still owing to Bay Point Capital.

### COUNT FIVE – WRONGFUL FORECLOSURE

70. Plaintiff incorporates the foregoing averments in this Count of its Complaint as if set out in
full herein.

71. Bay Point Capital foreclosed on the property located at 5100 Peachtree Industrial Blvd. and
5150 Peachtree Industrial Blvd. on July 5, 2017.

72. Prior to foreclosing on July **5**, 2017, Bay Point Capital ran a foreclosure advertisement
regarding the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial
Blvd. which incorrectly stated that the foreclosure sale would be conducted on July **6**, 2017.

73. As a result of publishing the wrong foreclosure date, potential bidders were not given notice
of the correct date on which to appear and submit bids.

74. Bay Point Capital has conducted a wrongful foreclosure by advertising the incorrect
foreclosure date and then conducting a foreclosure sale on a different date from the one
advertised. *See, e.g., Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 177–78, 733 S.E.2d
457, 464 (2012) (Citing *Amirfazli v. VATACS Group, Inc.*, 311 Ga. App. 471, 473(2), 716
S.E.2d 523 (2011) for conclusion that "factual issue existed over whether error

–13–

in advertisement chilled the bid at foreclosure sale, where the public record from which potential bidders could have gleaned the error in the advertisement was not filed until four days before the sale" and applying principal that incorrect foreclosure advertisement chills bidding, such that "[f]or the foregoing reasons, the Racettes may be able to introduce evidence, within the framework of their complaint, to support the conclusion that the published foreclosure advertisements containing inaccuracies about the existence of a senior lien on the Property chilled the bidding at the 2011 Foreclosure Sale. Consequently, the Racettes may be able to demonstrate that the appellees breached their duty to conduct the 2011 Foreclosure Sale in a fair manner, and thus may be able to establish the breach-of-duty element of their wrongful foreclosure claim."); *and Kouros v. Sewell*, 225 Ga. 487, 487, 169 S.E.2d 816, 816 (1969) (in which the official syllabus of the Georgia Supreme Court summarized the holding that the defendant's foreclosure bid of less than fair market "value ***and the grantee in such deed to secure debt ha[ving] informed the grantor therein that the sale date is different from that actually advertised, a court of equity is authorized to set the sale aside.***") (emphasis supplied).[2]

75. As a result of Bay Point Capital's wrongful foreclosure, it has damaged Plaintiff in an amount to be proven at trial, but of not less than Five Million Dollars ($5,000,000.00).

## COUNT SIX --ATTORNEY'S FEES

76. Plaintiff incorporates the foregoing averments in this Count of its Complaint as if set out in

_____

2 The statements in the "syllabus of the court" (which indicates it is prepared by the court and not a syllabus of an editor) are part of the holding of the Supreme Court. *See, e.g., Head v. Wilkinson*, 186 Ga. 739, 740, 198 S.E. 782, 783 (1938) (relying on syllabus of the court as its holdings and stating that "[t]he holdings in the syllabus require no elaboration other than a reference to the case of...").

full herein.

77. Defendants have acted in bad faith, has been stubbornly litigious, and has caused Plaintiff

unnecessary trouble and expense in forcing him to bring this action.

78. Defendants are liable for Plaintiff's attorney's fees pursuant to Georgia law, including

O.C.G.A. § 13-6-11.

COUNT SEVEN--PREJUDGMENT INTEREST

79. Plaintiff incorporates the foregoing averments in this Count of its Complaint as if set out in

full herein.

80. Defendants are obligated to pay Plaintiff prejudgment interest at the legal rate of seven percent

(7%) per annum, as provided in O.C.G.A. § 7-4-2, until the date of payment by Defendants to

Plaintiff.

81. Mr. Andros, John Doe 1, and John Doe 2 are jointly liable for the damages caused to Plaintiff

by virtue of their breach of duty of good faith, civil conspiracy, negligent representations, and

other wrongdoing in an amount to be proven at trial, but of not less than Five Million Dollars

($5,000,000.00), representing the difference in value of the real properties located at 5100

Peachtree Industrial Boulevard and 5150 Peach Tree Industrial Boulevard compared to the

loan balance still owing to Bay Point Capital.

82. The amount of prejudgment interest at the legal rate of seven percent (7%) per annum on

compensatory damages of not less than Five Million Dollars ($5,000,000.00) is not less than

$350,000.00 per annum, which equates to not less than $958.90 per day from the date on which

Defendants recorded the Deeds in Lieu until Judgment is entered.

COUNT EIGHT – PUNITIVE DAMAGES

83. Plaintiff incorporates the foregoing averments in this Count of its Complaint as if set out in

–15–

full herein.

84. Defendants' actions, accordingly, appear to be willful and with knowledge of the law.

85. Defendants' conduct constitutes willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, as a result of which Defendants are liable for punitive damages.

86. The amount of punitive damages assessed against Defendants should be an amount sufficient to punish them, deter them from similar conduct in the future, and to deter others who might commit similar misconduct. *See. e.g.. Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 231, 476 S.E.2d 565, 570 (1996) ("Given the unquestioned purpose of the punitive damages statute, the sole issue for a jury is the amount of money necessary to punish the defendant and deter future misconduct.").

87. Punitive damages in the range of four (4) to ten (10) times the amount of compensatory damages are regularly upheld as an appropriate amount of punitive damages. *See, e.g., Time Warner Entm't Co. v. Six Flags Over Georgia, LLC*, 254 Ga. App. 598, 607, 563 S.E.2d 178, 186 (2002) ("In this case, the ratio of compensatory to punitive damages is 1 to 1.3. We see no 'shocking disparity' inherent in this figure. Cf. *Gore,* 517 U.S. at 581, n. 34, 582–583, 116 S.Ct. 1589 (1:500 ratio reversed). Nor does it appear to approach that fuzzy line suggesting the bounds of 'constitutional impropriety.' Id. at 581, 116 S.Ct. 1589, citing *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 21, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (1:4 ratio upheld); *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 451, 462(III), 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (1:10 ratio upheld). More importantly, however, given the amount of intentional economic damage inflicted by the appellants, corporate entities with collective assets measured in billions of dollars, we believe the award of punitive damages was

–16–

reasonably calculated to punish them and to deter such conduct in the future. See *Simon v. San Paolo U.S. Holding Co.,* supra, 2001 WL 1380836.").

88. Applying the legally appropriate range of punitive damages compared to compensatory damages, Defendants should be assessed not less than Twenty Million ($20,000,000.00) to Fifty Million Dollars ($50,000,000.00) of punitive damages, given that Mr. Andros, John Doe 1, and John Doe 2 are jointly liable for the compensatory damages caused to Plaintiff by virtue of their breach of duty of good faith, negligent representations, civil conspiracy, and wrongful foreclosure in an amount to be proven at trial, but of not less than Five Million Dollars ($5,000,000.00), representing the difference in value of the real properties located at 5100 Peachtree Industrial Boulevard and 5150 Peach Tree Industrial Boulevard compared to the loan balance still owing to Bay Point Capital.

89. The amount of punitive damages of not less than Twenty Million ($20,000,000.00) to Fifty Million Dollars ($50,000,000.00) is also appropriate based on Defendants' financial resources.

90. For example, and not by way of limitation, as to the financial resources of Defendant Bay Point Capital

    a.  Bay Point Capital raised Twenty-Eight Million Six Hundred Thousand Dollars ($28,600,000.00) through an offering of securities in 2015, as reported to the United States Securities and Exchange Commission, or S.E.C., as reported in Form "D" filed with the S.E.C. on August 14, 2015; and

    b.  Bay Point Capital raised Forty-Eight Million Seven Hundred Fifty-Nine Thousand Fifty-Eight Dollars ($48,759,058.00) through an offering of securities in 2017, as reported to the United States Securities and Exchange Commission, or S.E.C., as reported in Form "D" filed with the S.E.C. on April 12, 2017.

–17–

91. For example, and not by way of limitation, as to its financial resources, Defendant Bay Point Advisors has represented on its website at http://www.bay-pointadvisors.com/secured-lending#assetmanagementexamples that it regularly engages in deals in which it provides multi-million dollar financing, such as the following:

    a.  "Bay Point Advisors provided funding to Old Toccoa Farm for the amount of $2,670,000 for the purpose of Residential Development";

    b.  "Bay Point Advisors provided funding to Godby Road, LLC for the amount of $2,250,000 for the purpose of Commercial Development - Data Center";

    c.  "Bay Point Advisors provided funding to Seminole Coal Resources for the amount of $18,000,000 for the purpose of developing Natural Resources";

    d.  "Bay Point Advisors provided funding to Briggs Manufacturing for the amount of $2,050,000 for the purpose of purchasing Plumbing Supplies";

    e.  "Bay Point Advisors provided funding to Cowbay Advertising for the amount of $2,000,000 for the purpose of installing roadside LED Billboards";

    f.  "Bay Point Advisors provided funding to One Direct Health for the amount of $850,000."

92. The amount of punitive damages to be awarded in this case is not capped by statute, as "the defendant acted, or failed to act, with the specific intent to cause harm," in light of Defendants' knowledge that the real property that they were taken was worth multiples of the amount of money owed to Bay Capital Partners and Plaintiff's requests for Defendants to accept a payoff which Defendants have refused and Defendants' foreclosure with knowledge that they did not advertise the correct sale date. O.C.G.A. § 51-12-5.1(f). For purposes of awarding punitive damages, each Defendant should be considered "an active tort-feasor."  O.C.G.A. § 51-12-

–18–

5.1(f).

**WHEREFORE,** the Plaintiff prays that:

i.      service be made upon the Defendants;

ii.     a jury trial be held;

iii.    judgment be entered against Defendants for damages to compensate Plaintiff for actual loss in a principal amount to be determined at trial, but of not less than Five Million Dollars ($5,000,000.00);

iv.     Plaintiff be awarded punitive damages in an amount determined by the enlightened consciousness of the jury, and sufficient to punish Defendants and to deter them from similar misconduct in the future, which case law and Defendants' financial resources indicate would appropriately be in the range of not less than Twenty Million Dollars ($20,000,000.00) to Fifty Million Dollars ($50,000,000.00);

v.      Plaintiff be awarded attorneys' fees and expenses of litigation as provided by law, including pursuant to O.C.G.A. § 13-6-11;

vi.     Plaintiff be awarded prejudgment interest as provided by law;

vii.    Plaintiff be awarded post-judgment interest as provided by law; and

viii.   Plaintiff be awarded such further relief as the Court deems just, equitable, and proper.

**This** 25th day of August, 2017.

[SIGNATURE ON THE FOLLOWING PAGE]

–19–

Respectfully submitted,

**WEENER & NATHAN LLP**

/s/ Eric J. Nathan
Philip Weener
Georgia Bar No. 745710
Eric J. Nathan
Georgia Bar No. 535280
*Attorneys for Plaintiff*

5887 Glenridge Drive NE
Suite 275
Atlanta, GA 30328
Phone: (770) 392-9004
Fax: (770) 522-9004
Emails: nathan@wnllp.com; weener@wnllp.com

–20–

**SHERIFF'S ENTRY OF SERVICE**

SHERIFF'S ENTRY OF SERVICE

Civil Action No. 2017CV294109

Date Filed 8-25-17

| | |
|---|---|
| Superior Court ☒ | Magistrate Court ☐ |
| State Court ☐ | Probate Court ☐ |
| Juvenile Court ☐ | |

Georgia, FULTON COUNTY

Chittranjan "Chuck" Thakkar

Attorney's Address

**Weener & Nathan LLP**
**5887 Glenridge Drive, N.E.**
**Suite 275**
**Atlanta, Georgia 30328**

Plaintiff

VS.

Name and Address of Party to be Served.

Bay Point Capital Partners, LP

c/o Registered Agent - Menden Freeman RA Services Inc

5565 Glenridge Connector NE, Suite 850

Atlanta, GA 30342

Bay Point Capital Partners LP, Bay Point
Advisors, LLC, Charles Andros, John Doe 1 &
John Doe 2                                    Defendant

Garnishee

SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

☐ I have this day served the defendant_____personally with a copy
of the within action and summons.

_____

**NOTORIOUS**

I have this day served the defendant_____by leaving a
copy of the action and summons at his most notorious place of abode in this County.

☐ Delivered same into hands of_____described as follows:
age, about_____years; weight_____pounds; height, about_____feet and_____inches, domiciled at the residence of
defendant.

_____

**CORPORATION**

Served the defendant Bay Point Capital Partners LP / Menden Freeman RA a corporation
by leaving a copy of the within action and summons with Cindy Iannucci
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said
affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the
defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the
place stated in the summons.

_____

**NON EST**

☐ Diligent search made and defendant_____
not to be found in the jurisdiction of this Court.

_____

This 27 day of _____, 19 2017

Dep. Morgan #282

**SHERIFF DOCKET_____ PAGE_____**
WHITE-CLERK   CANARY-PLAINTIFF   PINK-DEFENDANT

DEPUTY

Fulton County Superior Court
***EFILED***LS
Date: 9/13/2017 5:25:45 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CHITTRANJAN "CHUCK" THAKKAR, and DCT SYSTEMS GROUP, LLC, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **CIVIL ACTION FILE NO.:** |
| | ) | **2017CV294607** |
| BAY POINT CAPITAL PARTNERS, LP, BAY POINT ADVISORS, LLC, CHARLES ANDROS, JOHN DOE 1, and JOHN DOE 2, | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## PLAINTIFFS' VERIFIED FIRST AMENDED COMPLAINT

COMES NOW Chittranjan "Chuck" Thakkar ("**Mr. Thakkar**" or "**Plaintiff**") and DCT Systems Group, LLC ("**DCT**" or "Plaintiff"), through their undersigned counsel, and pursuant to O.C.G.A. § 9-11-15(a) amend their Complaint filed on or about August 25, 2017, in the above-referenced action against Bay Point Capital Partners, LP ("**Bay Point Capital**"), Bay Point Advisors, LP ("**Bay Point Advisors**"), Charles Andros ("**Mr. Andros**"), and business partners of Mr. Andros to be identified through discovery in this action and presently designated as John Doe 1 and John Doe 2 (with Bay Point Capital, Bay Point Advisors, Mr. Andros, John Doe 1 and John Doe 2 being collectively referred to as "**Defendants**"), respectfully showing the Court:

### AMENDMENT

Due to further investigation, additional evidence and facts that have come to light, justice requires that Plaintiff's Complaint be amended to include DCT as a Plaintiff in this action against the Defendants.

Plaintiffs file this amendment prior to the entry of a pre-trial order; therefore, a request to

this Court for leave to amend their Complaint is not necessary.

## PARTIES, JURISDICTION, & VENUE

1.    Plaintiff Thakkar is a resident of the State of Florida.

2.    Plaintiff DCT is a Georgia limited liability company.

3.    Bay Point Capital is a Delaware limited partnership, registered with the Georgia Secretary of State to do business in the State of Georgia.    Bay Point's registered agent is MendenFreiman RA Services, Inc., located at 5565 Glenridge Connector NE, Suite 850, Fulton County, Atlanta, Georgia, 30342.    Bay Point Capital maintains an office at 3050 Peachtree Rd, Suite 2, Atlanta, GA 30305.

4.    The general partner of Bay Point Capital is Bay Point Advisors.    Bay Point Advisors is a Florida limited liability company, registered to do business in the State of Georgia.    The registered agent for Bay Point Advisors is Greg Jacobs, located at 3050 Peachtree Road, NW, Suite 2, Fulton County, Atlanta, Georgia 30305, who may be served with process.

5.    Mr. Andros is, upon information and belief, the controlling individual for Defendants Bay Point Capital and Bay Point Advisors.    Mr. Andros may be served at the offices of Bay Point Capital, located at 3050 Peachtree Rd, Suite 2, Atlanta, GA 30305, or at his residence, or wherever else he may be located in person.

6.    John Doe 1 is a business partner of Mr. Andros.    The residence of John Doe 1 is presently unknown, but will be ascertained through discovery in this action.

7.    John Doe 2 is a business partner of Mr. Andros.    The residence of John Doe 2 is presently unknown, but will be ascertained through discovery in this action. All of the Defendants are subject to jurisdiction in this Court and venue is proper in this Court because the contract upon which this litigation is based, in material part, was to be performed in Fulton County,

Georgia, was executed in material part in Fulton County, Georgia, and has been performed in material part in Fulton County, Georgia.

8.    Furthermore, Mr. Andros is subject to jurisdiction in this Court and venue is proper in this Court because the negligent representations made by Mr. Andros, as described more fully herein, occurred in material part in Fulton County, Georgia.

9.    Furthermore, Mr. Andros is subject to jurisdiction in this Court and venue is proper in this Court because Mr. Andros is a resident of Fulton County, Georgia.

10.   Furthermore, John Doe 1 and John Doe 2 are subject to the jurisdiction in this Court based on Georgia's Long Arm Statute, O.C.G.A. § 9-10-91(1), because John Doe 1 and John Doe 2 have, upon information and belief, engaged in numerous communications with the remaining Defendants for the purposes of conducting business deals in the State of Georgia, to be further discovered during this action.

## BACKGROUND FACTS

### PLAINTIFF'S LOAN WITH WELLS FARGO

11.   Mr. Thakkar obtained a loan from Wells Fargo, National Association ("**Wells Fargo**"), which was evidenced by a certain Amended, Restated and Consolidated Promissory Note, dated April 30, 2013, in the original principal amount of $12,910,000.00 (the "**Individual Promissory Note**").

12.   As of August 31, 2015, Mr. Thakkar owed Wells Fargo $8,896,250.05 in principal on the Individual Promissory Note.

13.   Certain companies affiliated with Mr. Thakkar and his family also were obligated to Wells Fargo on certain loans (the "**Thakkar Company Loans**"), as evidenced by a certain Amended, Restated Promissory Note, dated April 30, 2013, in the original principal amount

of $19,750,000.00 (the "**Thakkar Companies Promissory Note**").

14. Companies in which Mr. Thakkar has a beneficial interest pledged their interests in real property as collateral to secure payment of the Individual Promissory Note and Company Promissory Note.   That collateral included real property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. to secure payment of the Promissory Note.

15. On May 4, 2015, five companies affiliated with Mr. Thakkar and his family filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "**Bankruptcy Court**").   Those companies are Bay Circle Properties, LLC, DCT Systems Group, LLC, Sugarloaf Centre, LLC, Nilhan Developers, LLC, and NRCT, LLC (the "**Thakkar Borrower Entities**").

16. As of August 31, 2015, the Thakkar Borrower Entities owed Wells Fargo $11,405,801.13 in principal on the Thakkar Companies Promissory Note.

17. As of August 31, 2015, Mr. Thakkar and/or the Thakkar Borrower Entities had not made certain payments on the Individual Promissory Note and/or Thakkar Companies Promissory Note.

18. Mr. Thakkar and Wells Fargo negotiated a settlement regarding the unpaid loans, and entered into a written Settlement Agreement dated November 18, 2015 (the "**Settlement Agreement**").

19. Under the terms of the Settlement Agreement, Mr. Thakkar and Thakkar Borrower Entities were required to make certain settlement payments by certain dates.

–4–

<u>DEFENDANTS' REPRESENTATIONS TO PLAINTIFF REGARDING ACQUIRING</u>

<u>PLAINTIFF'S LOAN WITH WELLS FARGO</u>

20.  Mr. Thakkar was introduced to Mr. Andros with the understanding that Mr. Andros, through Bay Point Capital and Bay Point Advisors, might have an interest in providing funding to replace the loan that Mr. Thakkar had with Wells Fargo.

21.  Mr. Thakkar met with Mr. Andros and explained to Mr. Andros that Mr. Thakkar and the Thakkar Borrower Entities had a loan which had been in default with Wells Fargo for which Mr. Thakkar and the Wells Fargo had executed the Settlement Agreement.

22.  Mr. Thakkar further explained to Mr. Andros that the collateral for the loan was worth much more than the amount owing to Wells Fargo.

23.  Mr. Andros discussed with Mr. Thakkar that Mr. Andros and his companies would want an annualized effective return of fifteen percent (15%) on the amount that they would pay Wells Fargo to purchase the loan.  Mr. Thakkar offered to pay up to an annualized effective eighteen percent (18%) return on the amount that Mr. Andros would pay Wells Fargo to purchase the loan, and Mr. Andros and Mr. Thakkar ultimately negotiated an annualized effective seventeen and one-half percent (17.5%) return on the amounts that Mr. Andros would pay Wells Fargo to acquire the loans from Wells Fargo.

24.  During the negotiations between Mr. Andros and Mr. Thakkar, Mr. Andros repeatedly promised to Mr. Thakkar that Mr. Andros' companies did not want the collateral securing the loans with Wells Fargo, but instead wanted the negotiated monetary return on their purchase price to acquire the Wells Fargo loans.

25.  Mr. Andros represented to Mr. Thakkar that Bay Point Capital "was not the kind of company" that would take real property worth much more than the loan.

26. Based on the representations and promises made by Mr. Andros, Mr. Thakkar introduced Mr. Andros to the appropriate individual at Wells Fargo to acquire the loans.

**PLAINTIFF'S PAYMENTS TO DEFENDANTS ON THE ACQUIRED LOAN AND DEFENDANTS TAKING OF COLLATERAL GROSSLY IN EXCESS OF THE LOAN BALANCE**

27. After making the representations to Plaintiff referenced above, Bay Point Capital then acquired the loans from Wells Fargo.

28. Bay Point Capital paid Wells Fargo less than the balance owing by Mr. Thakkar and the Thakkar Borrower Entities when Bay Point Capital acquired those loans, upon information and belief.

29. After Bay Point Capital acquired the loans from Wells Fargo, Mr. Thakkar paid Bay Point Capital all but approximately $2,700,000.00 of the amount owing by arranging for certain sales of real property and loans from other entities to pay to Bay Point Capital.

30. As a result of the payments to Bay Point Capital, only $2,700,000.00 remained owing to Bay Point Capital on May 9, 2017 when the final payment due under the Settlement Agreement matured. The maturity date stated in the Settlement Agreement was May 1, 2017, and the Bankruptcy Court applied a five (5) business day cure period, which brought the payment due date of May 9, 2017.

31. Mr. Thakkar worked diligently to obtain the final payment for Bay Point Capital prior to or by May 9, 2017, but due to a number of events and circumstances not totally in his control was unable to make the final payment by that date.

32. Since May 9, 2017, Mr. Thakkar has offered to pay the full payoff amount of approximately $2,700,000 to Bay Point Capital, and Bay Point Capital has refused that offer of payment.

33. Instead of accepting payment, Bay Point Capital has recorded certain Deeds in Lieu of

foreclosure to the real property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd., by which Bay Point Capital claims that it has acquired ownership to those two properties.

34. The recorded Deeds in Lieu of foreclosure are void as execution of the Deeds in Lieu were not consistent with the DCT Operating Agreement requirements.

35. The properties located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. are worth not less than $8,000,000.00.

36. By way of example of the value of those real properties, shortly before Bay Point Capital took the property located at 5100 Peachtree Industrial Boulevard, an offer of $4,600,000.00 had been made for that real property.

37. Shortly before Bay Point Capital took the property located at 5150 Peachtree Industrial Boulevard, an offer of $2,400,000.00 had been made for that real property.

38. By recording Deeds in Lieu at to the real property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd., subject to security deeds naming Bay Point Capital as grantee, Bay Point Capital took properties worth not less than $8,000,000.00, despite being owed only approximately $2,700,000.00.

39. Bay Point Capital subsequently foreclosed on the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd.

40. Bay Point Capital ran a foreclosure advertisement prior to foreclosing on the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd.

41. In its foreclosure advertisement, Bay Point Capital incorrectly stated that the foreclosure sale of the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. would be conducted on July **6**, 2017.

42. Defendant Thakkar notified Bay Point Capital that July 6, 2017 was a Thursday and therefore the foreclosure notice was improper.

43. After significant resistance to Defendant Thakkar, Bay Point Capital cancelled or withdrew the anticipated July of 2017 foreclosure sale.

44. Bay Point Capital re-advertised a foreclosure sale of the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. to be conducted on September 5, 2017.

45. On or about September 3, 2017, Mr. Thakkar, through counsel John A. Christy of Schreeder, Wheeler & Flint, LLP, tendered payment in full, attached hereto as Exhibit "A," to Bay Point Capital's counsel (the **"Offer Letter"**).

46. In the Offer Letter, Mr. Thakkar tendered "the sum of $2,800,000, which fully satisfied the debt owed by [the Thakkar Borrower Entities] to Bay Point and the release of all other collateral."

47. The Offer Letter further confirmed that the $2,800,000 tender was in escrow and could be remitted to Bay Point Capital upon receipt of Bay Point Capital's written acceptance of the tender.

48. Offer Letter proposed the dismissal, with prejudice, of this civil action, and general mutual releases, in order to resolve all outstanding issues between Mr. Thakkar, the Thakkar Borrower Entities, and the Defendants.

49. The Offer Letter also placed Bay Point Capital on notice that the recorded Deeds in Lieu needed to be consistent with the requirements outlined in the DCT Operating Agreement.

50. Despite notice of void Deeds in Lieu and valid tender, Bay Point Capital went forward with the September 5, 2017 foreclosure.

51. In addition to the Offer Letter, on September 5, 2017, Plaintiff Thakkar attended the

foreclosure sale in person and read the terms out loud to John F. Isbell, counsel for Bay Point Capital.

52. A third party took video of Mr. Thakkar reading the Offer Letter to Mr. Isbell.

53. Despite Mr. Thakkar's tender of the full amount owed by the Thakkar Entities to Bay Point Capital and Mr. Thakkar reading the terms of the Offer Letter out loud to Mr. Isbell, Bay Point Capital moved forward with the foreclosure sale and the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. was foreclosed.

## COUNT ONE – BREACH OF DUTY OF GOOD FAITH

54. Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out in full herein.

55. Under the Settlement Agreement and state law, Bay Point Capital had the option to record a Deed in Lieu either subject to its liens, or not subject to its liens, or to foreclose on collateral. Settlement Agreement, p. 23, ¶ 13.A.

56. Bay Point Capital had discretion under the Settlement Agreement to choose from the foregoing possible remedies after an event of default, with the Settlement Agreement stating: "Upon or after the occurrence of an Event of Default, Lender may at any time *and in its discretion*, without further notice to any Obligor or any other Person, record one or more of the Deeds in Lieu to effectuate a transfer of title to one or more Parcels of the Encumbered Property to Lender or its designated affiliate." Settlement Agreement, p. 23, ¶ 13.A (emphasis supplied).

57. The Settlement Agreement provides that "the internal laws of the State of Georgia" will be applied to determine the parties' rights and obligations to one another. Settlement Agreement, p. 28, ¶ 29.

58. Under Georgia law, every contract carries with it an implied duty to act in "good faith" in performing the terms of the contract.

59. The duty of good faith implied in all contracts applies to the election of remedies available under the contract.  *See, e.g., In re Royal*, 75 B.R. 50, 53 (Bankr. S.D. Ga. 1987) ("I further conclude that First Bulloch is bound by the obligation of good faith which is implied in every contract in Georgia to apply the proceeds in the manner proposed by Mrs. Royal. O.C.G.A. 13–4–20. *In Kleiner v. First National Bank*, 581 F.Supp. 955 (N.D.Ga., 1984) the court collected authorities which stand generally for the proposition that when one party has the power to unilaterally set terms in a contract, the discretion to do so is limited by a requirement that the creditor's action uphold both the spirit as well as the letter of the agreement. *Id.* at 960 n. 5. As applied to the facts in this case, I adopt such a rule and hold that a lender must apply proceeds of collateral first to the primary obligations secured by that collateral. This upholds not only the Debtor's expectations as testified to in this case but also the reasonable expectations of any borrower who pledges collateral to secure his or her direct obligations as well as to secure the obligations of other parties.").[1]

---

1  *See also* Theresa Kilgore Porter, 23 Causes of Action 521, *Cause of Action for Breach of Contract Arising from Bank's Failure to Act in Good Faith*, Causes of Action First Series (Originally published in 1990; July 2016 Update) ("Where a contract confers on the defendant a discretionary power affecting the rights of the plaintiff, the plaintiff may establish a breach of the defendant's obligation to act in good faith through evidence that the defendant failed to exercise that discretionary power in good faith. See, e.g., In re Kham & Nate's Shoes, No 2 Inc, 97 Bankr Rep 420 (Bankr Ct ND Ill 1989) later proceeding First Bank of Whiting v Kham & Nate's Shoes, No 2 Inc, 104 Bankr Rep 909 (ND Ill 1989) [Illinois law; bank is required to exercise right to terminate agreement in good faith and in accordance with reasonable expectations of parties]; Perdue v Crocker National Bank, 38 Cal3d 913, 216 Cal Rptr 345, 702 P2d 503 (1985) app dism 475 US 1001 (1986) [bank is required to exercise right to establish insufficient fund charges in good faith and in accordance with reasonable commercial standards]; Ginn v Citizens & Southern National Bank, 145 Ga App 175, 243 SE2d 528 (1978) [creditor must exercise right to accelerate payment in good faith]; Carrico v Delp, 141 Ill App3d 684, 95 Ill Dec 880, 490 NE2d 972 (1986) [power to terminate credit agreement must be exercised in good faith]; Burkhardt v City National

60. When a contract governing the rights of a lender and borrower contains discretionary provisions, the lender has a duty of good faith, as implied in all contracts, to elect the remedy that harms the borrower the least so long as the lender can be made whole by that remedy. In the case at hand, the remedy that would make the lender whole, and harm the borrower the least, was foreclosure of one piece of collateral rather than recording Deeds in Lieu to both pieces of collateral, and then foreclosing that same collateral, which was worth vastly more than the loan balance.

61. As a result of Bay Point Capital's actions, Mr. Thakkar has been damaged in the amount of the value of the collateral exceeding the debt balance.

62. In determining the appropriate interpretation and application of the Settlement Agreement, the Court should apply the meaning conveyed by Mr. Andros to Mr. Thakkar that the collateral would not be taken to satisfy the loan unless necessary, for which reason Bay Point Capital's recording of deeds to real property worth multiples of the loan balance was an improper interpretation of the discretionary provisions under which Bay Point Capital could record Deeds or foreclose and look to various parcels of real property. *See* O.C.G.A. § 13-2-4 ("The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning.").

63. Defendants, including Mr. Andros, John Doe 1, and John Doe 2 are jointly liable for the damages caused to Plaintiff by virtue of their breach of the duty of good faith implied by law

---

Bank, 57 Mich App 649, 226 NW2d 678 (1975) [mortgagee is required to exercise power to estimate amount needed in escrow to pay for taxes and insurance honestly and in good faith]; Best v United States National Bank, 303 Or 557, 739 P2d 554 (1987) [power to set fees for processing of checks dishonored for insufficient funds must be exercised in good faith].").

in the Settlement Agreement, in an amount to be proven at trial, but of not less than Five
Million Dollars ($5,000,000.00), representing the difference in value of the real properties
located at 5100 Peachtree Industrial Boulevard and 5150 Peachtree Industrial Boulevard
compared to the loan balance still owing to Bay Point Capital.

### COUNT TWO – CIVIL CONSPIRACY

64. Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out
in full herein.

65. Plaintiff is entitled "[t]o recover damages based on a civil conspiracy,…[if he] show[s] that
two or more persons combined 'either to do some act which is a tort, or else to do some
lawful act by methods which constitute a tort.... [T]he conspiracy of itself furnishes no cause
of action. The gist of the action ... is not the conspiracy alleged, but the tort committed against
the plaintiff and the resulting damage.'  The essential element of the alleged conspiracy is
proof of a common design establishing 'that two or more persons in any manner, either
positively or tacitly, arrive at a mutual understanding as to how they will accomplish an
unlawful design.' After the conspiracy is formed, members of the conspiracy are jointly and
severally liable for acts of co-conspirators done in furtherance of the conspiracy." *McIntee
v. Deramus*, 313 Ga. App. 653, 656, 722 S.E.2d 377, 379–80 (2012).

66. "The existence of a conspiracy may 'be inferred from the nature of the acts done, the relation
of the parties, the interests of the alleged conspirators, and other circumstances.' (Citation
and punctuation omitted.) *Nottingham v. Wrigley,* 221 Ga. 386, 388, 144 S.E.2d 749 (1965).
It is usually within the province of the jury to draw such inferences; and so cases involving
an alleged civil conspiracy are typically not resolved on summary judgment. *Outside
Carpets, Inc. v. Industrial Rug Co.,* supra, 228 Ga. at 269, 185 S.E.2d 65 (the resolution of a

–12–

conspiracy claim was not appropriate for summary judgment); *Tyler v. Thompson*, 308
Ga.App. 221(3), 707 S.E.2d 137 (2011) (trial court erred in granting summary judgment on
civil conspiracy issue)."   *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty.
Trust*, 298 Ga. 221, 225–26, 780 S.E.2d 311, 318 (2015).

67.   Mr. Andros combined with John Doe 1 and John Doe 2, upon information and belief, to take
property from Plaintiff, or companies affiliated with Plaintiff in which Plaintiff had a
beneficial interest, by promising Plaintiff that Defendants did not want the property and
would not take the property, then by obtaining the property by utilizing the remedy most
damaging to Plaintiff, despite the availability of a less damaging remedy, by recording Deeds
in Lieu to both 5100 Peachtree Industrial Boulevard and 5150 Peachtree Industrial Boulevard
and then foreclosing on both properties, when Defendants could have taken only one property
and received sufficient value to satisfy the remaining balance owing on the loans.

68.   Mr. Andros, John Doe 1, and John Doe 2 are jointly liable for the damages caused to Plaintiff
by virtue of their civil conspiracy in an amount to be proven at trial, but of not less than Five
Million Dollars ($5,000,000.00), representing the difference in value of the real properties
located at 5100 Peachtree Industrial Boulevard and 5150 Peachtree Industrial Boulevard
compared to the loan balance still owing to Bay Point Capital.

## COUNT THREE – PROMISSORY ESTOPPEL

69.   Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out
in full herein.

70.   Mr. Andros represented to Mr. Thakkar that Mr. Andros did not want and would not seek to
take the real properties that Defendant Bay Point Capital subsequently took.

71.   Mr. Andros represented to Mr. Thakkar that Mr. Andros wanted an annualized effective

–13–

return of seventeen and one-half percent (17.5%) on the amount paid to Wells Fargo.

72. Mr. Thakkar reasonably relied on Mr. Andros' promises, as summarized herein, and in reliance on those promises executed the Settlement Agreement.

73. Injustice can only be avoided by enforcing Mr. Andros' promises.

74. To enforce Mr. Andros' promises, the Court should void the Deeds in Lieu recorded by Bay Point Capital and set aside the foreclosure by Bay Point Capital.

## COUNT FOUR – FRAUDULENT OR NEGLIGENT REPRESENTATIONS

75. Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out in full herein.

76. Mr. Andros represented to Mr. Thakkar that Mr. Andros did not want and would not seek to take the real properties that Defendant Bay Point Capital subsequently took.

77. Mr. Andros represented to Mr. Thakkar that Mr. Andros wanted a return of seventeen and one-half percent (17.5%) on the amount paid to Wells Fargo.

78. If the foregoing representations were made *with* intent to mislead Mr. Thakkar, then the representations were *fraudulent*, and have caused Mr. Thakkar damage for which he is entitled to be compensated in an amount to be determined at trial.

79. If the foregoing representations were made *without* an intent to mislead Mr. Thakkar, then the representations were *negligent*, and have caused Mr. Thakkar damage for which he is entitled to be compensated in an amount to be determined at trial.

80. Mr. Andros' representations to Mr. Thakkar, as summarized herein, were essential and material inducements that led Mr. Thakkar to execute the Settlement Agreement, which has now proved to be to his detriment.

81. Mr. Thakkar reasonably relied upon Mr. Andros' negligent representations to his detriment.

82. Defendants are jointly liable to Plaintiff by virtue of their untrue representations to Mr. Thakkar for the damages caused to Mr. Thakkar in an amount to be proven at trial, but of not less than Five Million Dollars ($5,000,000.00), representing the difference in value of the real properties located at 5100 Peachtree Industrial Boulevard and 5150 Peachtree Industrial Boulevard compared to the loan balance still owing to Bay Point Capital.

### COUNT FIVE – WRONGFUL FORECLOSURE

83. Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out in full herein.

84. Bay Point Capital wrongfully foreclosed on the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. on September 5, 2017.

85. Prior to foreclosing on September 5, 2017, Plaintiff had tendered full payment to Bay Point Capital of all amounts owing to Plaintiff.

86. As a result of refusing a valid tender of payment in full, Defendants' foreclosure of the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. constitutes a wrongful foreclosure.

87. Bay Point Capital conducted a wrongful foreclosure by foreclosing and selling the property after Plaintiff Thakkar escrowed $2,800,000 as tender to Bay Point Capital. The Supreme Court of Georgia held that a party can sustain an action for wrongful foreclosure when that party tenders the amount due under a security deed and note. *Metro Atlanta Task Force for the Homeless, Inc., v. Ichthus Community Trust*, 298 Ga. 221, 236, 780 S.E.2d 311, 324 (2015).

88. As a result of Bay Point Capital's wrongful foreclosure, it has damaged Plaintiffs in an amount to be proven at trial, but of not less than Five Million Dollars ($5,000,000.00).

89. Bay Point Capital wrongfully foreclosed on the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd. on September 5, 2017 because the Deeds in Lieu of foreclosure were void.

90. Bay Point Capital was aware that the recorded Deeds in Lieu were void via John Christy's September 3, 2017 Offer Letter.

91. Bay Point Capital was aware that the recorded Deeds in Lieu were void via Chuck Thakkar reading the Offer Letter out loud to attorney John Isbell on September 5, 2017, the day of the foreclosure.

92. Bay Point Capital foreclosed the property on September 5, 2017 with full knowledge that the recorded Deeds in Lieu were void.

93. As a result of Bay Point Capital's wrongful foreclosure, Plaintiff Mr. Thakkar has suffered mental anguish. "In a wrongful foreclosure action, an injured party may seek damages for mental anguish. . ." *Blanton v. Duru,* 247 Ga.App. 175, 178-179(5), 543 S.E.2d 448 (2000).

## COUNT SIX – CONVERSION OF PLAINTIFF DCT'S PERSONAL PROPERTY

94. Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out in full herein.

95. Prior to the September 5, 2018 foreclosure, Plaintiff DCT owned the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd.

96. There are several items of DCT's personal property that remain in the property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd.

97. Bay Point Capital, by wrongfully foreclosing and selling the real property located at 5100 Peachtree Industrial Blvd. and 5150 Peachtree Industrial Blvd, Bay Point has wrongfully taken possession of the personal property therein.

98. The value of the personal property is approximately five hundred thousand and No/100 Dollars ($500,000.00).

99. As a result of Bay Point Capital's wrongful foreclosure, it has damaged Plaintiff DCT in an amount to be proven at trial, but of not less than $500,000.00.

### Count Seven --Attorney's Fees

100. Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out in full herein.

101. Defendants have acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense in forcing him to bring this action.

102. Defendants are liable for Plaintiff's attorney's fees pursuant to Georgia law, including O.C.G.A. § 13-6-11.

### Count Eight--Prejudgment Interest

103. Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out in full herein.

104. Defendants are obligated to pay Plaintiff prejudgment interest at the legal rate of seven percent (7%) per annum, as provided in O.C.G.A. § 7-4-2, until the date of payment by Defendants to Plaintiff.

105. Mr. Andros, John Doe 1, and John Doe 2 are jointly liable for the damages caused to Plaintiff by virtue of their breach of duty of good faith, civil conspiracy, negligent representations, and other wrongdoing in an amount to be proven at trial, but of not less than Five Million Dollars ($5,000,000.00), representing the difference in value of the real properties located at 5100 Peachtree Industrial Boulevard and 5150 Peachtree Industrial Boulevard compared to the loan balance still owing to Bay Point Capital.

106. The amount of prejudgment interest at the legal rate of seven percent (7%) per annum on compensatory damages of not less than Five Million Dollars ($5,000,000.00) is not less than $350,000.00 per annum, which equates to not less than $958.90 per day from the date on which Defendants recorded the Deeds in Lieu until Judgment is entered.

## COUNT NINE – PUNITIVE DAMAGES

107. Plaintiffs incorporate the foregoing averments in this Count of their Complaint as if set out in full herein.

108. Defendants' actions, accordingly, appear to be willful and with knowledge of the law.

109. Defendants' conduct constitutes willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, as a result of which Defendants are liable for punitive damages.

110. The amount of punitive damages assessed against Defendants should be an amount sufficient to punish them, deter them from similar conduct in the future, and to deter others who might commit similar misconduct. *See, e.g., Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 231, 476 S.E.2d 565, 570 (1996) ("Given the unquestioned purpose of the punitive damages statute, the sole issue for a jury is the amount of money necessary to punish the defendant and deter future misconduct.").

111. Punitive damages in the range of four (4) to ten (10) times the amount of compensatory damages are regularly upheld as an appropriate amount of punitive damages. *See, e.g., Time Warner Entm't Co. v. Six Flags Over Georgia, LLC*, 254 Ga. App. 598, 607, 563 S.E.2d 178, 186 (2002) ("In this case, the ratio of compensatory to punitive damages is 1 to 1.3. We see no 'shocking disparity' inherent in this figure. Cf. *Gore,* 517 U.S. at 581, n. 34, 582–583, 116 S.Ct. 1589 (1:500 ratio reversed). Nor does it appear to approach that fuzzy line

suggesting the bounds of 'constitutional impropriety.' Id. at 581, 116 S.Ct. 1589,

citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21, 111 S.Ct. 1032, 113 L.Ed.2d 1

(1991) (1:4 ratio upheld); *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443,

451, 462(III), 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (1:10 ratio upheld). More importantly,

however, given the amount of intentional economic damage inflicted by the appellants,

corporate entities with collective assets measured in billions of dollars, we believe the award

of punitive damages was reasonably calculated to punish them and to deter such conduct in

the future. See *Simon v. San Paolo U.S. Holding Co.,* supra, 2001 WL 1380836.").

112. Applying the legally appropriate range of punitive damages compared to compensatory

damages, Defendants should be assessed not less than Twenty Million ($20,000,000.00) to

Fifty Million Dollars ($50,000,000.00) of punitive damages, given that Mr. Andros, John

Doe 1, and John Doe 2 are jointly liable for the compensatory damages caused to Plaintiff

by virtue of their breach of duty of good faith, negligent representations, civil conspiracy,

and wrongful foreclosure in an amount to be proven at trial, but of not less than Five Million

Dollars ($5,000,000.00), representing the difference in value of the real properties located at

5100 Peachtree Industrial Boulevard and 5150 Peachtree Industrial Boulevard compared to

the loan balance still owing to Bay Point Capital.

113. The amount of punitive damages of not less than Twenty Million ($20,000,000.00) to Fifty

Million Dollars ($50,000,000.00) is also appropriate based on Defendants' financial

resources.

114. For example, and not by way of limitation, as to the financial resources of Defendant Bay

Point Capital

    a. Bay Point Capital raised Twenty-Eight Million Six Hundred Thousand Dollars

($28,600,000.00) through an offering of securities in 2015, as reported to the United

States Securities and Exchange Commission, or S.E.C., as reported in Form "D"

filed with the S.E.C. on August 14, 2015; and

b.   Bay Point Capital raised Forty-Eight Million Seven Hundred Fifty-Nine Thousand

Fifty-Eight Dollars ($48,759,058.00) through an offering of securities in 2017, as

reported to the United States Securities and Exchange Commission, or S.E.C., as

reported in Form "D" filed with the S.E.C. on April 12, 2017.

115.  For example, and not by way of limitation, as to its financial resources, Defendant Bay Point

Advisors has represented on its website at http://www.bay-pointadvisors.com/secured-

lending#assetmanagementexamples that it regularly engages in deals in which it provides

multi-million dollar financing, such as the following:

a.   "Bay Point Advisors provided funding to Old Toccoa Farm for the amount of

$2,670,000 for the purpose of Residential Development";

b.   "Bay Point Advisors provided funding to Godby Road, LLC for the amount of

$2,250,000 for the purpose of Commercial Development - Data Center";

c.   "Bay Point Advisors provided funding to Seminole Coal Resources for the

amount of $18,000,000 for the purpose of developing Natural Resources";

d.   "Bay Point Advisors provided funding to Briggs Manufacturing for the amount

of $2,050,000 for the purpose of purchasing Plumbing Supplies";

e.   "Bay Point Advisors provided funding to Cowbay Advertising for the amount of

$2,000,000 for the purpose of installing roadside LED Billboards";

f.   "Bay Point Advisors provided funding to One Direct Health for the amount of

$850,000."

116. The amount of punitive damages to be awarded in this case is not capped by statute, as "the defendant acted, or failed to act, with the specific intent to cause harm," in light of Defendants' knowledge that the real property that they were taken was worth multiples of the amount of money owed to Bay Capital Partners and Plaintiff's requests for Defendants to accept a payoff which Defendants have refused and Defendants' foreclosure with knowledge that they did not advertise the correct sale date. O.C.G.A. § 51-12-5.1(f). For purposes of awarding punitive damages, each Defendant should be considered "an active tort-feasor." O.C.G.A. § 51-12-5.1(f).

**WHEREFORE,** the Plaintiff prays that:

i.    service be made upon the Defendants;

ii.   a jury trial be held;

iii.  judgment be entered against Defendants for damages to compensate Plaintiff for actual loss of Plaintiffs' real property in a principal amount to be determined at trial, but of not less than Five Million Dollars ($5,000,000.00);

iv.   judgment be entered against Defendants for damages to compensate Plaintiff for actual loss of Plaintiffs' personal property in a principal amount to be determined at trial, but of not less than Five Million Dollars ($500,000.00);

v.    Plaintiff be awarded punitive damages in an amount determined by the enlightened consciousness of the jury, and sufficient to punish Defendants and to deter them from similar misconduct in the future, which case law and Defendants' financial resources indicate would appropriately be in the range of not less than Twenty Million Dollars ($20,000,000.00) to Fifty Million Dollars ($50,000,000.00);

vi.   Plaintiff be awarded attorneys' fees and expenses of litigation as provided by law,

including pursuant to O.C.G.A. § 13-6-11;

vii.    Plaintiff be awarded prejudgment interest as provided by law;

viii.    Plaintiff be awarded post-judgment interest as provided by law; and

ix.    Plaintiff be awarded such further relief as the Court deems just, equitable, and proper.

**This** 13th day of September, 2017.

Respectfully submitted,

**WEENER & NATHAN LLP**

/s/ Eric J. Nathan
Philip Weener
Georgia Bar No. 745710
Eric J. Nathan
Georgia Bar No. 535280
*Attorneys for Plaintiff*

5887 Glenridge Drive NE
Suite 275
Atlanta, GA 30328
Phone: (770) 392-9004
Fax: (770) 522-9004
Emails: nathan@wnllp.com; weener@wnllp.com

–22–

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CHITTRANJAN "CHUCK" THAKKAR,<br>and DCT SYSTEMS GROUP, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **CIVIL ACTION FILE NO.:** |
| v. | ) | |
| | ) | **2017CV294607** |
| BAY POINT CAPITAL PARTNERS, LP, | ) | |
| BAY POINT ADVISORS, LLC, | ) | |
| CHARLES ANDROS, JOHN DOE 1, and | ) | |
| JOHN DOE 2, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFICATION FOR PLAINTIFF'S FIRST AMENDED COMPLAINT

PERSONALLY APPEARED before the undersigned officer duly authorized to administer and receive oaths, CHITTRANJAN "CHUCK" THAKKAR, who, after being duly sworn, state that all of the allegations in the foregoing PLAINTIFFS' VERIFIED AMENDED COMPLAINT, are true and correct to the best of my knowledge, information, and belief.

This 13th day of September, 2017.

_____
Chittranjan "Chuck" Thakkar

Sworn to and subscribed before me this

13th day of September, 2017.

_____
Notary Public

My commission expires: 9-16-18

[SEAL]
SHANNON D. ZIMMERMAN
MY COMMISSION
NOTARY
PUBLIC
EXPIRES
09.16.2018
FULTON COUNTY, GEORGIA

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CHITTRANJAN "CHUCK" THAKKAR,** and **DCT SYSTEMS GROUP, LLC,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION FILE NO.:** |
| | ) | **2017CV294607** |
| **BAY POINT CAPITAL PARTNERS, LP, BAY POINT ADVISORS, LLC, CHARLES ANDROS, JOHN DOE 1, and JOHN DOE 2,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

### VERIFICATION FOR PLAINTIFF'S FIRST AMENDED COMPLAINT

PERSONALLY APPEARED before the undersigned officer duly authorized to administer and receive oaths, DCT SYSTEMS GROUP, LLC, through its Manager Chittranjan "Chuck" Thakkar, who, after being duly sworn, state that all of the allegations in the foregoing PLAINTIFFS' VERIFIED AMENDED COMPLAINT, are true and correct to the best of my knowledge, information, and belief.

This 13th day of September, 2017.

DCT Systems Group, LLC

By: Chittranjan "Chuck" Thakkar
Its: Manager

Sworn to and subscribed before me this

13th day of September, 2017.

Notary Public

My commission expires: 9-16-18

[SEAL]

# EXHIBIT "A"

LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP
1100 PEACHTREE STREET, NE
SUITE 800
## ATLANTA, GEORGIA 30309-4516

(404) 681-3450
FACSIMILE: (404) 681-1046

John A. Christy

E-Mail: jchristy@swfllp.com
Direct Dial: (404) 954-9819


September 3, 2017


John F. Isbell, Esq.
THOMPSON HINE LLP                    **VIA E-MAIL JOHN.ISBELL@THOMPSONHINE.COM**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326

      Re:    DCT Systems Group, LLC / Bay Point Capital Partners, LLC

Dear John:

      I am writing to you to make a tender of the remaining amounts owed to Bay Point Capital Partners, LP ("Bay Point") by DCT Systems Group, LLC (DCT"). DCT computes that the remaining balance owed by it to Bay Point to not exceed $2,800,000. DCT has arranged for and tenders the sum of $2,800,000 in complete and final payment of the debt owed by it to Bay Point and the release of all other collateral. If for some reason, Bay Point has calculated a different amount, please provide me with the calculations. I can confirm to you that the sum of $2,800,000 is in escrow to be tendered on behalf of DCT and such sum cane be remitted to Bay Point upon receipt of written acknowledgement that it will accept this tender.

      In addition, and as a further inducement to Bay Point, I am authorized by Mr. Chuck Thakkar to state that upon acceptance and payment of the $2,800,000, he is prepared to dismiss the current lawsuit filed by him in the Superior Court of Fulton County, Georgia, against Bay Point and Mr. Andros with prejudice. In addition, he and his affiliates are willing to exchange general mutual releases with Bay Point. The result is that all issues between DCT and its affiliates, Chuck Thakkar and his affiliates and Bay Point and its affiliates would be resolved and there shall be no further claims by any party against the other.

      The exchange of mutual releases and the dismissal of the pending lawsuit is not a condition of the tender. They simply represent additional consideration which the Debtors

LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP

Page 2
September 3, 2017

and Mr. Thakkar are willing to offer as a further incentive to Bay Point which I understand
has requested such a release in the past.

As you know, there is an issue as to whether or not any excess proceeds from the
upcoming foreclosure sale must be remitted to DCT. In addition, I should point out to you
that execution of the form deed in lieu prepared by Bay Point's predecessor in interest was
not consistent with the governing operating agreement of DCT. Section 5.05 of the DCT
operating agreement requires that the sale of all or substantially all of assets of the company
be approved by a majority vote of the members, Niloy C. Thakkar and Rohan C. Thakkar.
I am not aware that approval was ever given. The court's authorization of the delivery of
the deed in lieu did not dispense with the need to observe corporate formalities.

Please let me hear from you upon receipt of this letter if this proposal is acceptable.
If the foreclosure does proceed, it is DCT's position that the foreclosure would be wrongful
due to the tender and it will take appropriate action not only to set aside the foreclosure
sale and seek whatever compensatory damages it may suffer.

I look forward to hearing favorably from you so that this chapter in everyone's life
can be concluded.

Sincerely,

*John A. Christy*

John A. Christy

JAC/abm





5887 Glenridge Drive NE
Suite 275
Atlanta, Georgia 30328
T: (770) 392-9004
F: (770) 522-9004
W:wnllp.com

Shannon Zimmerman                                      szimmerman@wnllp.com

September 14, 2017

Gwinnett County Superior Court
Gwinnett County Justice and Administration Center
**Attn: Real Estate Recording**
75 Langley Drive
Lawrenceville, Georgia 30046

      Re:    **Recording of Lis Pendens**
               *Chittranjan "Chuck" Thakkar v. Bay Point Capital Partner, LP, Bay Point*
               *Advisors, LLC, Charles Andros, John Doe 1 and John Doe 2*
               Civil Action File No.:  2017CV294607 /
               Superior Court of Fulton County

Dear Clerk:

      I have enclosed an original *Lis Pendens* to be recorded in the Lien Records of Gwinnett County, as well as our firm's check in the amount of $15.00 for the recording fee.

      Please return the recorded original to my attention in the enclosed self-addressed, stamped envelope.

      Thank you in advance for your prompt attention to this matter.  Should you have any questions or concerns, please do not hesitate to contact me at 770-392-9004.

               Sincerely,

               WEENER & NATHAN LLP

               Shannon Zimmerman
               Paralegal

Enclosures

# WEENER & NATHAN LLP



Record and return to:
Devin B. Phillips
Weener & Nathan, LLP
5887 Glenridge Drive, NE, Suite 275
Atlanta, Georgia 30328

Please cross-reference:
Deed Book 55109, Pages 76-85,
Gwinnett County, Georgia, Deed
Records.

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

CHITTRANJAN "CHUCK" THAKKAR,
and DCT SYSTEMS GROUP, LLC,

      Plaintiffs,

v.

BAY POINT CAPITAL PARTNERS, LP,
BAY POINT ADVISORS, LLC,
CHARLES ANDROS, JOHN DOE 1, and
JOHN DOE 2,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION FILE NO.:

2017CV294607

## NOTICE OF LIS PENDENS

NOTICE IS HEREBY GIVEN that on the 13th day of September, 2017, Chittranjan

"Chuck" Thakkar and DCT Systems Group, LLC (the "Plaintiffs") filed a Verified Amended

Complaint against Bay Point Capital Partners, LP, Bay Point Advisors, LLC, Charles Andros, John

Doe 1, and John Doe 2. (the "Defendants'), in the Superior Court of Fulton County, State of

Georgia (the "Lawsuit"). The Lawsuit seeks relief against the Defendants in connection with the

real property (the "Property") located in Gwinnett County, described as:

1

(i)     All those certain tracts of land in the County of Gwinnett, State of Georgia, being more particularly described as follows (the "Land"):

Tract I. ALL THAT TRACT OR PARCEL OF LAND LYING and being in Land Lot 271 of the 6th District, Gwinnett County, Georgia, being more particularly described as follows: TO LOCATE THE POINT OF BEGINNING, BEGIN at a point formed by the intersection of the southeasterly right-of-way line of Peachtree Industrial Boulevard (having a 225-foot right-of-way) with the Land Lot Line common to Land Lots 270 and 271; THENCE departing the said land lot line running along the southeasterly right-of-way line of Peachtree Industrial Boulevard South 57 degrees 27 minutes 54 seconds West a distance of 328.14 feet to an iron pin found (one half inch rebar), THENCE continuing along the said right-of-way line South 57 degrees 28 minutes 54 seconds West a distance of 30.04 feet to a nail and cap set in the asphalt roadway of Corners North Court, being the TRUE POINT OF BEGINNING; THENCE from the true point of beginning as thus established and departing the said right-of-way line running South 29 degrees 26 minutes 38 seconds East a distance of 357.61 feet to a nail and cap set; THENCE running across a portion of the aforesaid Corners North Court and along the property line of property now or formerly belonging to Advantage Industrial Automation, Inc. and Shu-May Tzou South 60 degrees 27 minutes 23 seconds West a distance of 380.60 feet to an iron pin found (one half inch rebar); THENCE running along the property line of property now or formerly belonging to Sara W. Brown North 29 degrees 26 minutes 38 seconds West a distance of 337.83 feet to an iron pin found (one half inch rebar), being located on the southeasterly right-of-way line of Peachtree Industrial Boulevard (having a 225-foot right-of-way); THENCE running along the said southeasterly right-of-way line North 57 degrees 28 minutes 54 seconds East and crossing back across a portion of Corners North Court easement a distance of 381.15 feet to the nail and cap set at the TRUE POINT OF BEGINNING. Said tract or parcel of land containing 3.038 acres (132,341 square feet) and being shown on ALTA/ACSM Boundary Survey prepared for Corers North, LLC, JPMorgan Chase Bank, JP Morgan Mortgage Capital, Inc. and Chicago Title Insurance Company, by Hayes, James & Associates, bearing the seal and certification of Leroy W. James, GRLS No. 1795, dated as of October 12, 2000, last revised November 19, 2002.

Tract 2: ALL THAT TRACT OR PARCEL OF LAND LYING and being in Land Lots 270 and 271, 6th District, Gwinnett County, Georgia, and being more particularly described as follows: COMMENCE at the intersection of the southerly right-of-way line for Peachtree Industrial Boulevard (right-of-way varies) with the westerly right-of-way line for Northwoods Parkway (right-of-way varies), if said rights-of-way were extended to form an angle instead of a curve.

THENCE along said right-of-way line for Peachtree Industrial Boulevard South 56 degrees 53 minutes 00 seconds West, a distance of 276.95 to a 1/2-inch rebar

2

found, said rebar being THE POINT OF BEGINNING; THENCE leaving said right-of-way line South 33 degrees 07 minutes 00 seconds East, a distance of 386.50 feet to a 5/8 inch rebar set; THENCE South 60 degrees 15 minutes 40 seconds West, a distance of 258.62 feet to a 5/8 inch rebar set, THENCE South 59 degrees 04 minutes 17 seconds West, a distance of 330.29 feet to an 5/8 inch rebar set; THENCE South 59 degrees 51 minutes 28 seconds West, a distance of 30.00 feet to a point; THENCE North 30 degrees 02 minutes 30 seconds West, a distance of 357.61 feet to a point on the aforementioned right-of-way line for Peachtree Industrial Boulevard (right-of-way varies): THENCE along said right-of- way line North 56 degrees 53 minutes 00 seconds East, a distance of 599.00 feet to an aforementioned 1/2-inch rebar found, said rebar being THE POINT OF BEGINNING. Said property contains 5.178 acres, more or less;

TOGETHER WITH those easement rights arising under that certain Limited Warranty Deed from 3 Plus Limited Partnership, a Georgia limited partnership (as to an undivided 35% fee simple interest) and Essex Real Estate Investors, L.P., a Delaware limited partnership (as to an undivided 65% fee simple interest), as tenants-in-common to Corners North Partnership, LLC, a Georgia limited liability company, dated December 29, 2000, filed for record January 2, 2001 at 11:41 a.m., recorded in Deed Book 21970, Page 154, Records of Gwinnett County, Georgia; as re-recorded February 23, 2004 at 11:38 a.m., recorded in Deed Book 37146, Page 6, aforesaid Records (Appurtenant to Tract I); ALSO TOGETHER WITH those easement rights arising under that certain Storm Sewer Easement Agreement by and between DCT Systems Group, LLC, a Georgia limited liability company and Peachtree Industrial Vest, LLC, a Georgia limited liability company, dated as of January 18, 2005, filed for record March 7, 2005, recorded in Deed Book 41853, Page 108, aforesaid Records; as affected by that certain Affidavit Relating to Title by S. Marcus Calloway, Esquire, dated November 11, 2010, filed for record November 12, 2010 at 8:55 a.m. recorded in Deed Book 50385, Page 512, aforesaid Records (Appurtenant to Tract I); TOGETHER WITH those easement rights arising under that certain Easement and Maintenance Agreement by and between Harlan R. Crow, Trammell Crow Company Employees, Inc., Trammell Crow Foundation, Ltd., Trammell Crow Partners, Ltd., Joel C. Peterson, J. McDonald Williams, 3 Plus Limited Partnership and Peachtree Federal Credit Union, a federally chartered credit union, dated as of December 14, 1995, filed for record December 19, 1995 at 3:29 p.m., recorded in Deed Book 12100, Page 151, aforesaid Records (Appurtenant to Tract 2); ALSO TOGETHER WITH those easement rights arising under that certain Storm Water Drainage Easement by and between DCT Systems Group LLC, a Georgia limited liability company and Northwoods 28/29, LLC, a Georgia limited liability company, dated as of August 26, 2005, filed for record January 27, 2006 at 12:07 p.m., recorded in Deed Book 46096, Page 336, aforesaid Records (Appurtenant to Tract 2);

(ii)    All buildings and improvements erected on the Land;

3

(iii)    All fixtures, machinery, equipment and other articles of real, personal or mixed property attached to, situated or installed in or upon, or used in the operation or maintenance of, the Land or any buildings or improvements situated thereon, whether or not such real, personal or mixed property is or shall be affixed to the Land;

(iv)    All building materials, building machinery and building equipment delivered on site to the Land during the course of, or in connection with, any construction, repair or renovation of the buildings and improvements situated or to be situated thereon;

(v)    All leases, licenses or occupancy agreements of all or any part of the Land and all extensions, renewals and modifications thereof, and any options, rights of first refusal or guarantees relating thereto; all rents, income, revenues, security deposits, issues, profits, awards and payments of any kind payable under the leases or otherwise arising from the Land;

(vi)    All contract rights, accounts receivable and general intangibles relating to the Land or the use, occupancy, maintenance, construction, repair or operation thereof; all management agreements, franchise agreements, utility agreements and deposits; all maps, plans, surveys and specifications; all warranties and guaranties; all permits, licenses and approvals; and all insurance policies;

(vii)    All estates, rights, tenements, hereditaments, privileges, easements, and appurtenances of any kind benefiting the Land; all means of access to and from the Land, whether public or private; and all water and mineral rights; and

(viii)    All "Proceeds" of any of the above-described property, which term shall have the meaning given to it in the Uniform Commercial Code as in effect in Georgia, whether cash or non-cash, and including insurance proceeds and condemnation awards; and all replacements, substitutions and accessions thereof.

In the Lawsuit, the Plaintiff seeks wrongful foreclosure against the Defendants and seeks to establish Plaintiffs' title in the Property.

This Notice is filed to give the Defendants notice of Petitioner's rights in and to the Property in accordance with the terms and provisions of O.C.G.A. § 44-14-610 so that the above-styled action shall act as a Lis Pendens as to said Property.

This 13th day of September, 2017.

4

Respectfully submitted,

**WEENER & NATHAN, LLP**

Philip H. Weener, Esq.
Georgia Bar No. 745710
Devin B. Phillips, Esq.
Georgia Bar No. 189782
*Attorneys for the Plaintiffs*

5887 Glenridge Drive, NE, Suite 275
Atlanta, Georgia 30328
T: (770) 392-9004
F: (770) 522-9004

**SHERIFF'S ENTRY OF SERVICE**

Civil Action No. 2017CV294607

Date Filed 8-25-17

Superior Court ☒    Magistrate Court ☐
State Court ☐    Probate Court ☐
Juvenile Court ☐

Georgia, FULTON COUNTY

Chittranjan "Chuck" Thakkar and
DCT Systems Group, LLC

Plaintiff

VS.

Attorney's Address

**Weener & Nathan LLP**
**5887 Glenridge Drive, N.E.**
**Suite 275**
**Atlanta, Georgia 30328**

Bay Point Capital Partners LP, Bay Point
Advisors, LLC, Charles Anbos, John Doe 1,
John Doe 2

Defendant

Name and Address of Party to be Served.

Bay Point Capital Partners LP
c/o Mentor Freiman RA Services, Inc, Registered Agent
5565 Glenridge Connect NE, Suite 850
Atlanta, GA 30342

Garnishee

SHERIFF'S ENTRY OF SERVICE

**PERSONAL**

I have this day served the defendant_____personally with a copy
of the within action and summons.

**NOTORIOUS**

I have this day served the defendant_____by leaving a
copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:
age, about_____years; weight_____pounds; height, about_____feet and_____inches, domiciled at the residence of
defendant.

**CORPORATION**

Served the defendant Bay Point Capital Partner O c/o Mentor Freiman a corporation
by leaving a copy of the within action and summons with Cindy Garbari
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

Diligent search made and defendant_____
not to be found in the jurisdiction of this Court.

This 27 day of September, 19 2017

Dep Morgan # 2502

**SHERIFF DOCKET_____ PAGE_____**

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

DEPUTY