IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

MAY 23 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | | |
|---|---|---|
| CHRISTIAN "CHUCK" THAKKAR and DCT SYSTEMS GROUP, LLC, | : : : : | |
| Appellants, | : : | CIVIL ACTION NO. 1:18-CV-0357-RWS |
| v. | : : | |
| BAYPOINT CAPITAL PARTNERS, LP, BAY POINT ADVISORS LLC, CHARLES ANDROS, JOHN DOE I, and JOHN DOE II, | : : : : : | BANKRUPTCY CASE NO. 15-58440-WLH  ADVERSARY CASE NO. 17-05248-WLH |
| Appellees. | | |

## ORDER

This case is before the Court on appeal from a decision of the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") issued by Bankruptcy Judge Wendy L. Hagenau on January 12, 2018 Doc. 1-2). For the reasons stated below, the decision of the Bankruptcy Court is **AFFIRMED**.

### I. Background

On May 4, 2015, Bay Circle Properties LLC, DCT Systems Group, LLC

AO 72A
(Rev.8/82)

("DCT"), Sugarloaf Centre LLC, Nilhan Developers LLC, and NRCT LLC (collectively "Debtors") filed chapter 11 bankruptcy. The cases are being jointly administered under Case No. 15-58440-WLH (the "Bankruptcy Case"). Debtors owed over $11 million to Wells Fargo Bank, N.A. ("Wells Fargo").

After commencement of the Bankruptcy Case, Debtors (and their non-debtor affiliates, including Mr. Thakkar) and Wells Fargo entered into a Settlement Agreement which was approved by the Bankruptcy Court by an Order entered on January 13, 2016 (as amended, the "Settlement Agreement"). Under the Settlement Agreement, Debtors were required to repay the outstanding balance on the loans and to execute deeds in lieu of foreclosure ("Deeds in Lieu") as to real property located at 5100 and 5150 Peachtree Industrial Boulevard, Norcross, Georgia (the "Property"). The Deeds in Lieu were transferred to Wells Fargo to be held in escrow. The maturity date of the Settlement Agreement was May 1, 2017, though the Settlement Agreement provided for a five business day cure period.

On March 24, 2016, Wells Fargo agreed to sell the loans with Debtors and their affiliates to Bay Point Capital Partners LP ("Bay Point CP"). On May 2, 2017, Bay Point CP filed a notice of default stating that, per the terms of the

AO 72A
(Rev.8/82)

Settlement Agreement, it intended to record the Deeds in Lieu. The Bankruptcy Court held a status conference on the notice on May 5, 2017. That same day, DCT filed a Motion to Compel Bay Point CP to Accept Payoff. The Bankruptcy Court heard the matter on an expedited basis on May 8, 2017.

Following the hearing, the Bankruptcy Court entered an Order in which it found that DCT did not waive its state law right to tender funds to Bay Point CP even after default; that Bay Point CP's right to record the Deeds in Lieu would become effective at 5:01 PM on May 9, 2017; and that DCT could tender payment in full to Bay Point CP, and Bay Point CP was directed to accept such tender, as long as it was made in full and unconditionally prior to Bay Point CP's recording of the Deeds in Lieu. The Bankruptcy Court also entered an order lifting the automatic stay as to the Property. (May 8, 2017 Order [2-8]).

Bay Point CP recorded the Deeds in Lieu as to the Property and advertised the Property for foreclosure sale in July 2017. The foreclosure notice incorrectly stated the date of the July sale, and Bay Point CP canceled the sale. Bay Point CP re-advertised the foreclosure sale for September 5, 2017. On September 3, 2017, counsel for DCT sent a letter via electronic mail to counsel

3

for Bay Point CP stating, "I am writing to you to make a tender of the remaining amounts owed" to Bay Point CP by DCT. The letter further provided that DCT intended to tender $2.8 million, which was in escrow. Counsel wrote:

> DCT has arranged for and tenders the sum of $2,800,000 in complete and final payment of the debt owed by it to Bay Point and the release of all other collateral. . . . I can confirm to you that the sum of $2,800,000 is in escrow to be tendered on behalf of DCT and such cane [sic] be remitted to Bay Point upon receipt of written acknowledgment that it will accept this tender.

(First Am. Compl., Ex. A [Doc. 2-9], at 59-61). On September 5, 2017, Mr. Thakkar appeared at the foreclosure sale and read the terms of the offer letter. Mr. Thakkar did not produce any funds. Bay Point CP conducted the foreclosure sale and credit bid $2.85 million.

Mr. Thakkar filed a complaint in the Superior Court of Fulton County, Georgia on August 25, 2017, and a First Amended Complaint on September 13, 2017. The case was removed to the Bankruptcy Court on September 27, 2017. On October 13, 2017, Appellees filed their answer and Motion for Judgment on the Pleadings. On January 24, 2018, the Bankruptcy Court entered its Order granting Appellees' Motion for Judgment on the Pleadings. On January 23,

4

2018, Appellants filed an appeal of the Bankruptcy Court Order. The appeal has been fully briefed by the parties and has been submitted to the Court for decision.

## II. Discussion

On appeal, this Court will "review the bankruptcy court's factual findings for clear error and its resolution of any legal questions *de novo*." In re Coady, 588 F.3d 1312, 1315 (11th Cir. 2009). Appellants assert the following errors occurred in the Bankruptcy Court proceedings:

(1) The Bankruptcy Court erred when it held that a breach of an express provision of the Settlement Agreement was required to invoke the implied duty of good faith and fair dealing;

(2) The Bankruptcy Court erred when it held that Appellees were not required to exercise their discretion in their election of remedies in good faith; and

(3) The Bankruptcy Court erred when it held that Appellants' tender of the full amount owed was not effective tender.

The Court will address each of these issues, in turn.

**A. Implied Duty of Good Faith and Fair Dealing**

5

Appellants assert that the Appellees breached their duty of good faith and fair dealing by electing to foreclose the Property, a remedy that Appellants contend granted Appellees a pecuniary gain to which they were not entitled. The Bankruptcy Court held that, "under Georgia law, there is no independent cause of action for a breach of the duty of good faith." (Jan. 24 Order [Doc. 1-2] at 6). Relying on ULQ v. Meder, 293 Ga. App. 176 (2008), Appellants assert that a party motivated by an improper pecuniary motive can be held liable for breach of the duty of good faith even when exercising discretion granted to that party by a contract. In Meder, the contract at issue permitted a termination only when the termination was in "the best interests of the company." The court found that this "limited" discretion had to be exercised in good faith. A failure to exercise good faith would be a breach of the contract. The Court expressly recognized that "where an agreement by its express terms grants the party absolute or uncontrolled discretion in making a decision," no duty of good faith is implied in the decision.

The Settlement Agreement in the present case imposed no limits on the exercise of Bay Point CP's discretion. Bay Point CP acted within the express terms of the Settlement Agreement. And, Bay Point CP had the express

6

permission of the Bankruptcy Court to proceed as it did. Appellants failed to allege a breach of any term of the Settlement Agreement, and thus, the Bankruptcy Court properly held that judgment on the pleadings was appropriate.

**B. Level of Discretion**

Appellants take issue with the conclusion that Appellees' discretion under the Settlement Agreement was absolute or unlimited. Citing the "last antecedent rule," Appellees contend that the discretion granted in the following sentence of the Settlement Agreement: "Bay Point is hereby authorized to exercise (in Bay Point's sole discretion) any and all rights and remedies Bay Point has . . ." refers to discretion whether to exercise remedies, not to discretion as to what remedies would be exercised. According to the rule of the last antecedent, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows. While this rule is not an absolute and can assuredly be overcome by other indices of meaning, we have said that construing a statute in accord with rule is quite sensible as a matter of grammar." Barnhart v. Thomas, 540 U.S. 20, 26 (2003) (internal citations and quotations omitted).

Assuming the issue is properly before the Court, the Court nevertheless finds that the rule does not govern in this instance. The reading urged by Appellees seeks to create an ambiguity where none exists. The clear meaning of the phrase is that it refers to the election of remedies by Appellees. This reading is also consistent with the Bankruptcy Court's interpretation of its own order: "The terms of the [May 8, 2017 [Doc. 2-8]] order specifically permitted Bay Point CP to exercise any and all rights and remedies it had under the Settlement Agreement, including the right to foreclose." (Jan. 24 Order [Doc. 1-2] at 8). The undersigned agrees with the conclusion of the Bankruptcy Court that Appellees had unlimited discretion in selecting remedies.

## C. Effectiveness of Appellants' Tender

The Bankruptcy Court found that Appellants never made a proper tender of full payment of the debt. In each instance of a purported tender, appellants attached conditions and/or failed to actually pay money. "In order to constitute a proper tender, the tender must be certain and unconditional, and be in full payment of the specific debt." Edward v BAC Home Loans Serv., L.P., 534 F. App'x 888, 892 (11th Cir. 2013). The undersigned agrees with the conclusion of the Bankruptcy Court that Appellants never made a proper tender.

Additionally, the purported tenders by appellants occurred after Appellees recorded the Deeds in Lieu. Thus, title had already passed before Appellants attempted a tender.

### III. Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court granting Appellees' Motion for Judgment on the Pleadings is hereby **AFFIRMED**.

**SO ORDERED**, this 23rd day of May, 2018.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE